IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

TIMOTHY WAYNE SALTSMAN,
     Plaintiff,

vs.                             Case No.: 5:17cv168/EMT

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,
     Defendant.
_____/

## MEMORANDUM DECISION AND ORDER

This case has been referred to the undersigned magistrate judge for disposition pursuant to the authority of 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, based on the parties' consent to magistrate judge jurisdiction (*see* ECF Nos. 10, 11). It is now before the court pursuant to 42 U.S.C. § 405(g) of the Social Security Act ("the Act"), for review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying Plaintiff's application for supplemental security income ("SSI") benefits under Title XVI of the Act, 42 U.S.C. §§ 1381–83.

Upon review of the record before this court, it is the opinion of the undersigned that the findings of fact and determinations of the Commissioner are supported by substantial evidence; thus, the decision of the Commissioner should be affirmed.

I.    PROCEDURAL HISTORY

On April 23, 2014, Plaintiff filed an application for SSI, and in the application he alleged disability beginning June 28, 2012 (tr. 26).[1]  His application was denied initially and on reconsideration, and thereafter he requested a hearing before an administrative law judge ("ALJ").  A hearing was held on April 18, 2016, and on August 25, 2016, the ALJ issued a decision in which he found Plaintiff "not disabled," as defined under the Act, at any time through the date of his decision (tr. 26–37).

II.    FINDINGS OF THE ALJ

In denying Plaintiff's claims, the ALJ made the following relevant findings (*see* tr. 26–37):

(1)    Plaintiff had not engaged in substantial gainful activity since April 23, 2014, the application date;

(2)    Plaintiff had the following severe impairments: bilateral degenerative joint disease of the knees, essential hypertension, osteoarthritis, and thyroid disorder;

(3)    Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix;

---

[1] All references to "tr." refer to the transcript of Social Security Administration record filed on September 8, 2017 (ECF No. 13).  Moreover, the page numbers refer to those found on the lower right-hand corner of each page of the transcript, as opposed to those assigned by the court's electronic docketing system or any other page numbers that may appear.

Case No.: 5:17cv168/EMT

(4)     Plaintiff had the residual functional capacity to perform light work as defined in 20 C.F.R. § 416.967(b).  Plaintiff could lift and carry, push and pull 20 pounds occasionally, and 10 pounds frequently.  With normal breaks in an eight-hour day, he could sit for six hours, and stand and/or walk for four hours; could never climb ladders, ropes, or scaffolds; could frequently climb ramps and stairs; could frequently balance, stoop, kneel, crouch, and crawl; and could tolerate one out of eight hours of exposure to hazards.  Plaintiff required a cane to ambulate distances of over 200 feet or on uneven surfaces;

(5)     Plaintiff had no past relevant work;

(6)     Plaintiff was born on August 11, 1961 and was 52 years old, which is defined as an individual closely approaching advanced age, on the date the application was filed;

(7)     Plaintiff had at least a high school education and was able to communicate in English;

(8)     Transferability of job skills was not an issue because Plaintiff did not have past relevant work;

(9)     Considering Plaintiff's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform;

(10)    Plaintiff had not been under a disability, as defined in the Act, since April 23, 2014, the date the application was filed.

Plaintiff then requested review from the Appeals Council and was granted

such.  In a decision issued on April 21, 2017, the Appeals Council fully adopted the

ALJ's findings at steps one, two, three, and four of the sequential evaluation process

and also his findings that Plaintiff had the residual functional capacity to perform

light work (tr. 5). In short, the Appeals Council affirmed the ALJ's findings at every step—except for his finding that Plaintiff was disabled beginning on August 10, 2016 (tr. 6). This was because, up until that date, Plaintiff was categorized as an individual aged 50–54, which is defined under the regulations as a person "closely approaching advanced age." *See* 20 C.F.R. § 404.163. On that August date, however, Plaintiff turned 55 and thus became categorized as a person of "advanced age." As the Appeals Council held, under Medical-Vocational Rule 202.14, such a person with the RFC to perform the full range of light work would be found disabled upon entering "advanced age" status (tr. 6). Accordingly, the Appeals Council held that, only as of August 10, 2016, Plaintiff became disabled (tr. 6).

The decision of the Appeals Council stands as the final decision of the Commissioner, subject to review in this court. Ingram v. Comm'r of Soc. Sec. Admin., 496 F.3d 1253, 1262 (11th Cir. 2007). This appeal followed.

III.    STANDARD OF REVIEW

Review of the Commissioner's final decision is limited to determining whether the decision is supported by substantial evidence from the record and was a result of the application of proper legal standards. Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991) ("[T]his Court may reverse the decision of the [Commissioner] only

when convinced that it is not supported by substantial evidence or that proper legal standards were not applied."); *see also* <u>Lewis v. Callahan</u>, 125 F.3d 1436, 1439 (11th Cir. 1997); <u>Walker v. Bowen</u>, 826 F.2d 996, 999 (11th Cir. 1987). "A determination that is supported by substantial evidence may be meaningless . . . if it is coupled with or derived from faulty legal principles." <u>Boyd v. Heckler</u>, 704 F.2d 1207, 1209 (11th Cir. 1983), *superseded by statute on other grounds as stated in* <u>Elam v. R.R. Ret. Bd.</u>, 921 F.2d 1210, 1214 (11th Cir. 1991). As long as proper legal standards were applied, the Commissioner's decision will not be disturbed if in light of the record as a whole the decision appears to be supported by substantial evidence. 42 U.S.C. § 405(g); <u>Falge v. Apfel</u>, 150 F.3d 1320, 1322 (11th Cir. 1998); <u>Lewis</u>, 125 F.3d at 1439; <u>Foote v. Chater</u>, 67 F.3d 1553, 1560 (11th Cir. 1995). Substantial evidence is more than a scintilla, but not a preponderance; it is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." <u>Richardson v. Perales</u>, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971) (quoting <u>Consolidated Edison Co. v. NLRB</u>, 305 U.S. 197, 59 S. Ct. 206, 217, 83 L. Ed. 126 (1938)); <u>Lewis</u>, 125 F.3d at 1439. The court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. <u>Martin v. Sullivan</u>, 894 F.2d 1520, 1529 (11th Cir. 1990) (citations omitted). Even if the

evidence preponderates against the Commissioner's decision, the decision must be affirmed if supported by substantial evidence.  <u>Sewell v. Bowen</u>, 792 F.2d 1065, 1067 (11th Cir. 1986).

The Act defines a disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  To qualify as a disability the physical or mental impairment must be so severe that the claimant is not only unable to do his previous work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  *Id*. § 423(d)(2)(A).  Pursuant to 20 C.F.R. § 404.1520(a)–(g),[2] the Commissioner analyzes a disability claim in five steps:

1.     If the claimant is performing substantial gainful activity, he is not disabled.

---

[2] In general, the legal standards applied are the same regardless of whether a claimant seeks DIB or SSI, but separate, parallel statutes and regulations exist for DIB and SSI claims (*see* 20 C.F.R. §§ 404, 416).  Therefore, citations in this Order should be considered to refer to the appropriate parallel provision.  The same applies to citations of statutes or regulations found in quoted court decisions.

Case No.: 5:17cv168/EMT

2.      If the claimant is not performing substantial gainful activity, his impairments must be severe before he can be found disabled.

3.      If the claimant is not performing substantial gainful activity and he has severe impairments that have lasted or are expected to last for a continuous period of at least twelve months, and if his impairments meet or medically equal the criteria of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, the claimant is presumed disabled without further inquiry.

4.      If the claimant's impairments do not prevent him from doing his past relevant work, he is not disabled.

5.      Even if the claimant's impairments prevent him from performing his past relevant work, if other work exists in significant numbers in the national economy that accommodates his RFC and vocational factors, he is not disabled.

The claimant bears the burden of establishing a severe impairment that keeps him from performing his past work.   20 C.F.R. § 404.1512.   If the claimant establishes such an impairment, the burden shifts to the Commissioner at step five to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform.  MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986).  If the Commissioner carries this burden, the claimant must then

prove he cannot perform the work suggested by the Commissioner.  Hale v. Bowen,

831 F.2d 1007, 1011 (11th Cir. 1987).

IV.    PLAINTIFF'S PERSONAL AND MEDICAL HISTORY

A.    Personal History

At his April 18, 2016, hearing, Plaintiff testified that he is divorced and lives

alone (tr. 47).  He stated that the last time he worked was 2004, when he worked as

a brick mason (tr. 48).  Plaintiff stated that he hurt his knee on a scaffold one day and

then couldn't work anymore (tr. 48).  Plaintiff approximated his weight at 294 pounds

(tr. 47).  He acknowledged that he smokes between eight and twelve cigarettes per

day (tr. 48).

Plaintiff testified that during a typical day he mostly watches television (tr. 49).

He said he can make his own meals in the microwave but usually gets a girl to do his

laundry for him (tr. 49).  As far as personal care such as bathing or getting dressed,

Plaintiff stated that sometimes he can do those things and sometimes he cannot (tr.

49).  Plaintiff stated that he can walk for five or ten minutes at a time but that he can

sit virtually all day (tr. 50).  Plaintiff stated he does not drive because with the pain

and numbness it would not be safe for him to do so (tr. 57–58).  Plaintiff indicated

that he uses a wheelchair, a walker, and a cane (tr. 61–62).

When asked which impairment was his most severe, Plaintiff answered that it was his knees, which had been a problem for the last four years (tr. 51–52).  He stated that his knees pop, crack, swell. and bleed and cause him significant pain (tr. 52).  Plaintiff provided that he takes medication for them and applies ice (tr. 52).  He related that sometimes he cannot get up and that he must keep lying down, because his knees hurt so bad that he cannot put weight on them (tr. 49–50, 56).  He stated that this happens three or four times per month and that sometimes during these episodes he has "used the bathroom on [him]self before [he] got there" (tr. 49–50).  Plaintiff stated that the situation with his knees had occurred nearly every day during the past month (tr. 57).

Upon questioning from his attorney, Plaintiff stated that he has problems with his vision: "Sometimes I go white, can't see nothing at all [inaudible].  I look at the sun, and it will turn just as white, and I can't see nothing for five, ten minutes until my vision starts coming back in sight" (tr. 67).  Plaintiff testified that under ordinary circumstances, he sometimes experiences blurry vision or "double vision" and that he cannot read very well (tr. 67).

Plaintiff indicated that he cannot always afford his medications and that during the last couple of years he has been unable to afford them at all (tr. 50–51). However, he did provide:

> Oh, I've taken medication because they gave it to me for free. But they – I didn't have a ride one time, and then I can't – I didn't get to see the doctor, so they quit giving me all my medication. And then I started going to the Village Health Center, and they gave me some blood pressure medicine and some pain medicine and some infection medicine, antibiotics the last time I was there at the Village Health Center.

(Tr. 51). Plaintiff also specifically stated that he gets free blood pressure medication from the Village Health Center and was going to obtain a 90-day supply on the day of the hearing (tr. 53).

B.      Relevant Medical History

As referenced by the ALJ, the medical evidence of record, which is sparse, shows that Plaintiff received medications as needed from St. Andrew Community Medical Center since June 2013 (tr. 31, 395-411). Plaintiff visited an emergency room on November 2, 2013, reporting a slip and fall in the shower which was causing pain in his left knee (tr. 31, 362-65). Examinations showed Plaintiff to have moderate tenderness and mild to moderate pain knee pain upon movement (tr. 31, 364). Plaintiff could walk without assistance but with some difficulty (tr. 31, 364). X-rays of Plaintiff's knee showed no evidence of fracture or joint effusion but mild

degenerative changes related to early osteoarthritis (tr. 31, 375). Plaintiff was provided with pain medication (tr. 31, 364-65).

Plaintiff again visited the St. Andrew Community Medical Center on December 18, 2013, because of knee pain as well as high blood pressure (tr. 31, 399). Plaintiff's knees were noted to be swollen and tender, and he was again provided with medication for pain (tr. 31, 399). Plaintiff's blood pressure reading was 160/100.

At a January 2014 examination, Plaintiff had a blood pressure reading of 159/100 (tr. 31, 397). Plaintiff was noted to have full range of motion, but also to wear a brace on his left knee and walk with a cane (tr. 32, 397). In May 2014, Plaintiff's blood pressure was measured at 159/96 (tr. 32, 395). He reported that his blood pressure "runs 180/108" when away from the clinic and that his blood pressure readings are higher when he is in pain (tr. 32, 395). Plaintiff was noted to have limited active and passive range of motion in all his extremities and 1/5 strength in his extremities (tr. 32, 395). In August 2014, Plaintiff had blood pressure readings of 160/100 and was continued on his medication regimen (tr. 32, 422-23).

The record shows that Plaintiff next sought treatment over a year later on September 3, 2015, when he visited the Bay Health Department (tr. 32, 429-39). Plaintiff reported that he had not been taking his medications for thyroid disease or

hypertension for a long time because he was unable to get refills from his clinic (tr. 32, 435). Plaintiff was restarted on his medications (tr. 32, 429-39). The next medical records are dated in April 2016, when Plaintiff underwent a consultative examination with Gwendolyn Bowers, DO (tr. 32, 444–55). Dr. Bowers completed a Disability Determination Examination, in which she found Plaintiff to have normal range of motion of the cervical and lumbar spine, bilateral elbows, wrists, ankles and knees, and limited range of motion of the bilateral hips and right shoulder (tr. 32, 453). He was found to have bilateral mild knee swelling and mild crepitus but without tenderness to palpation along the joint lines or any "evidence of any type of pain with varus or valgus maneuvers" (tr. 452–53). Plaintiff was observed to have a slightly wide-based, "rocking" gait but was able to get on and off the examination table without difficulty (tr. 32, 452–53). Plaintiff was able to rise up out of his chair but used his hands when doing so (tr. 32, 452). He had reduced strength, but there was no evidence of muscle atrophy of the upper or lower extremities (tr. 32, 453). X-rays taken Plaintiff's knees showed "minimal medial compartment degenerative change in each knee" with "[n]o acute fracture or other concerning abnormality" (tr. 32, 442).

V.    DISCUSSION

Case No.: 5:17cv168/EMT

A.     Plaintiff's first argument is that the ALJ's decision to give "little weight" to the consultative examination opinion of Dr. Bowers amounted to error.

Weighing the opinions and findings of treating, examining, and non-examining physicians is an integral part of the process for determining disability.  An ALJ may reject any medical opinion if the evidence supports a contrary finding.  <u>Sryock v. Heckler</u>, 764 F.2d 834, 835 (11th Cir. 1985).  Nonetheless, the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor, and the failure to do so is reversible error.  <u>Sharfarz v. Bowen</u>, 825 F.2d 278, 279 (11th Cir. 1987); *see also* <u>Hudson v. Heckler</u>, 755 F.2d 781, 786 (11th Cir. 1985) (without the ALJ stating the specific weight given to different medical opinions and the reasons therefor, it is impossible for a reviewing court to determine whether the ultimate decision is supported by substantial evidence).  Absent good cause, the opinions of treating physicians must be accorded substantial or considerable weight. <u>Lamb v. Bowen</u>, 847 F.2d 698, 703 (11th Cir. 1988).

As it pertains to Dr. Bowers' opinion, the ALJ noted the following:

For some reason Dr. Bowers did not assess the following, which renders the assessment wholly inadequate in comprehensively assessing the claimant's functional abilities:
  • How much the claimant could lift above 10 pounds.
  • How much the claimant could carry at any level of weight.

• How long at one time the claimant could stand or walk.
• How long in an eight-hour day the claimant could stand or walk.
• How far the claimant could walk without a cane.
• If the use of a cane is medically necessary, giving a yes and then an unknown.
• Whether the claimant could use his other hand to carry objects when using a cane.
• Whether the claimant could frequently or continuously reach overhead, and reach in all other directions, as well as handle, finger, feel, push or pull.
• Which was the claimant's dominant hand.
• Whether the claimant could climb stairs, ramps, ladders or scaffolds.
• Whether the claimant could balance, stoop, kneel, crouch or crawl.
• Whether the claimant had any hearing or vision problems, failing to fill out the form on these two areas.
• Whether the claimant had any environmental limitations, such as how much exposure he could tolerate to unprotected heights, moving mechanical parts, operating a motor vehicle, humidity, wetness, fumes, odors, dusts, gases, poor ventilation, extreme heat and cold, and vibrations.
• Whether there were any other work-related activities affected by any impairments, and indicate how the activities were affected, with medical findings to support this assessment.
• Whether the limitations have lasted or will last for 12 consecutive months.

(tr. 33–34).

As it relates to the first of these inadequacies in particular, Dr. Bowers provided on the evaluation form that Plaintiff could occasionally lift up to 10 pounds,

but where the form asked whether Plaintiff could lift 11 to 20 pounds, 21 to 50 pounds, or 51 to 100 pounds, Dr. Bowers wrote: "Did not assess" (tr. 444). While these non-answers were indicative of the numerous other parts of the evaluation form that were not answered, Plaintiff claims that the ALJ erred in this instance by overlooking Dr. Bowers' additional comment: "Biceps and triceps strength 3/5. Likely claimant can pick up (lift) up to 10 pounds" (tr. 444). Plaintiff evidently reads this statement to mean that Plaintiff could *not* lift more than 10 pounds, but this does not appear to be a fair reading of Dr. Bowers' answers, for if Plaintiff were correct, then it would logically follow that Dr. Bowers would have simply answered "no" to the questions asking if Plaintiff could lift any greater weight. Rather, it appears that Dr. Bowers' commentary was simply to explain why she found that Plaintiff could lift up to 10 pounds.

Similarly, Dr. Bowers declined to assess whether Plaintiff's use of a cane was necessary, how far Plaintiff could ambulate without use of a cane, or whether Plaintiff could use his free hand to carry small objects while using a cane (tr. 445), but Plaintiff claims the ALJ overlooked the following explanatory note from Dr. Bowers on that section of the form: "Claimant has limited ranges of motion of the [bilateral] hips and mild [bilateral] knee swelling/inflammation which slightly increases his fall

risk. A can[e] would be useful to prevent falls" (tr. 445). Again, this commentary does not override Dr. Bowers' "did not assess" response; it simply serves to identify factors that *might* affect his use of a cane. Thus, the ALJ's failure to discuss the statement does not amount to error.

More importantly, the ALJ cited numerous areas in which Dr. Bowers' assessments of severe limitation did not comport with her own examination findings, which included the following:

> • The claimant was only taking blood pressure medications, as far as the examiner could ascertain.
> • The claimant was in no acute distress.
> • He walked with a rocking gait and a wide base from one side to the other.
> • He could get on and off the table without difficulty. He could rise out of the chair.
> • He could button and unbutton with his fingers.
> • He could hear conversations at normal levels.
> • Though his visual acuity was 20/200, this was without corrective lenses.
> • His spine had a mild kyphosis of the thoracic spine in the upper portion, and some limitations of full extension also, but he was non-tender to palpation over the spinous processes of his cervical, thoracic, and lumbar spine.
> • With his knees, he had bilateral mild knee swelling, but it was non-tender to palpation along the joint lines. He had some mild crepitus with flexion and extension, but no evidence of any type of pain vargus or valgus maneuvers.
> • He had a nodule and some tenderness in his digits, but no tenderness to palpation along the anterior clavicles, AC joints, or along the trapezius of his shoulder joints. His

grip strength was 4/5 bilaterally. He was able to perform the finger thumb test bilaterally. There was no bony deformity, bony abnormality, or muscle atrophy of the bilateral hands. The interosseous muscle strength was intact bilaterally. The claimant could give full range of motion of the DIP, PIP, and MCP joints of both hands. He was able to make a fist in both hands without difficulty.
• There was no edema, cyanosis, or clubbing of the upper or lower extremities.
• Range of motion was normal for the elbows, forearms, wrists, left shoulder, cervical spine, lumbar spine, knees and bilateral ankles, with knee x-rays showing only mild degenerative changes at best, with the impression being minimal medial compartment degenerative change in each knee. There was no acute fracture or other concerning abnormality.
• Neurologically there did not appear to be evidence of muscle atrophy of the upper or lower extremities, which included the biceps, triceps, brachioradialis, quadriceps muscles, the gastroenemius muscles or the hamstrings.

(tr. 34).

The ALJ also noted that, despite the fact that Dr. Bowers limited Plaintiff to occasional manipulative abilities, Plaintiff was found to have no bony deformities or atrophy in the muscles of his hands, had full range of motion, and could make a fist with both hands without difficulty (tr. 34–35). Despite Dr. Bowers' indication that Plaintiff's use of a cane was warranted, she separately indicated uncertainty as to whether a cane was medically necessary (tr. 35). The ALJ additionally noted that x-rays showed only mild, degenerative changes (tr. 35). It is also noteworthy that,

amidst these uncertainties, the ALJ elected to err on the side of caution and added a limitation for ambulating no distances over 200 feet or over uneven surfaces (tr. 35). The ALJ also limited Plaintiff's ability to stand and walk to four hours in an eight hour workday.  As far as Plaintiff's ability to sit, the ALJ noted that, while Dr. Bowers appeared to limit Plaintiff to 15 minutes, Plaintiff was able to sit at the 35 minute hearing before him without any visible discomfort (tr. 35).

Accordingly, the court finds that the ALJ's evaluation of Dr. Bowers' opinion was supported with evidence of the inconsistencies between that opinion and the record as a whole as well as Dr. Bowers' own medical notes.

B.     Next, Plaintiff claims that the ALJ erroneously found that he did not have a severe vision impairment, nor that he had any functional limitations caused by his poor vision.  Plaintiff asserts that the ALJ improperly found that Frank Walker, M.D., determined Plaintiff's vision impairment to be non-severe.

In determining whether a claimant has a severe impairment for purposes of step two of the ALJ's analysis, the ALJ need not identify any particular impairment or enumerate all the impairments that are found to be severe.  Tuggerson-Brown v. Comm'r of Soc. Sec., 572 F. App'x 949, 951–52 (11th Cir. 2014); Heatly v. Comm'r of Soc. Sec., 382 F. App'x 823, 824–25 (11th Cir. 2010).   So long as the ALJ provides that he has taken all of Plaintiff's impairments into consideration when

determining Plaintiff's capacity to work at steps three and beyond, any omission

during step two is of no consequence. Tuggerson-Brown, 572 F. App'x at 951–52;

Perry v. Astrue, 280 F. App'x 887, 893-94 (11th Cir. 2008).

Plaintiff notes that Dr. Walker, in completing a medical impairments

identification form in August 2014, identified among Plaintiff's listing of

impairments that he had a "loss of central visual acuity" which was identified as

severe (tr. 126). On that same form, however, it was noted that Plaintiff's "limitations

in personal care tasks, cooking, cleaning, shopping, traveling in public, paying bills,

[and] maintaining a residence . . . is [sic] considered mild in nature" (tr. 126).

Moreover, Dr. Walker also completed an RFC assessment form in which he found

Plaintiff to not have any visual limitations (tr. 129). Thus, the ALJ noted that this

examination report "thorough[ly] examin[ed] . . . the medical evidence of record" but

included no visual limitations in Plaintiff's RFC assessment (tr. 33). Finding that the

opinion was generally consistent with the longitudinal medical record, the ALJ drew

upon this report to buttress his finding that Plaintiff did not have a severe visual

impairment (tr. 33).

Additionally, the ALJ noted that Dr. Bowers, after her disability examination

of Plaintiff on May 3, 2016, noted that Plaintiff's poor vision in his left eye, but also

that he was not then wearing any corrective lenses (tr. 35, 451). Dr. Bowers also

noted that Plaintiff was able to ambulate freely despite the lack of corrective lenses (tr. 455).

Plaintiff also underwent a consultative eye examination on May 6, 2016, at Eye Center South, where Plaintiff was diagnosed with hypertension retinopathy and mild cataracts (tr. 458). The consultative examiner opined that Plaintiff had "severe visual field loss despite normal appearing anterior and posterior ocular exams" (tr. 458). The ALJ found the visual field findings of severe vision loss to be inconsistent with Plaintiff's normal appearing anterior and posterior ocular examination (tr. 35).

Plaintiff also takes issue with the ALJ's finding that Plaintiff did not mention vision problems during his hearing until his representative asked him about his vision toward the end of the hearing. The ALJ cited this as evidence tending to show that Plaintiff's vision problems were not as severe as Plaintiff alleged (tr. 28, 35). Plaintiff points out that when the ALJ asked during the hearing what bothered him most to keep him from working, Plaintiff mentioned his blurred vision along with his numbness, weakness, and high blood pressure (tr. 28). The ALJ also noted that, when asked by his representative, Plaintiff "did not say that he could not read; only that he could not read too good, as he had blurry vision and double vision sometimes" (tr. 28). Ultimately, the ALJ found the evidence not to show that Plaintiff's vision

was severe enough to have limited his ability to perform basic work activities (tr. 28–29).

In light of the above, the court finds that the omission of Plaintiff's visual difficulties from the ALJ's identification of his severe impairments is inconsequential. Further, as far as whether the ALJ considered Plaintiff's vision—severe impairment or not—while assessing his RFC, the above discussion speaks for itself. Plaintiff may take issue with the ALJ's assessment of his vision, but the court is reminded that its task is not to determine whether its own analysis might differ from that of the ALJ, but to determine whether the ALJ's decision is supported by substantial evidence. The court concludes that it is.

C.     Next, Plaintiff claims the ALJ did not adequately assess his obesity when determining his severe impairments and the limitations they might cause on his ability to perform work activities. Plaintiff notes that Dr. Walker, in his non-examining opinion given in August of 2014, identified obesity in his list of severe impairments (tr. 125). Review of the entire opinion shows only this simple listing of obesity, but no mention of obesity throughout the report or, for that matter, no identification of obesity among the impairments alleged by Plaintiff (tr. 117–32). Plaintiff also provides that Dr. Bowers, in her Disability Determination Examination (tr. 451–55), identified Plaintiff as obese (tr. 452). Dr. Bowers also mentioned obesity as a

possible factor in the wear and tear to the cartilage in Plaintiff's knees (tr. 454–55). Additionally, Plaintiff himself mentioned during his hearing that if he lost some weight he might be able to stand for a longer period of time, but as it was he was able to stand for five to ten minutes at a time (tr. 50).

An ALJ must consider whether obesity is an impairment when evaluating disability, *see* SSR 02–1P, 2000 WL 628049, at *1 (S.S.A. Sept. 12, 2000) ("we consider obesity to be a medically determinable impairment and remind adjudicators to consider its effects when evaluating disability"). Nonetheless, it is Plaintiff who bears the burden of proving that her obesity results in functional limitations and that he was "disabled." *See* 20 C.F.R. § 404.1512(a) & (c) (2011) (instructing claimant that the ALJ will consider "only impairment(s) you say you have or about which we receive evidence" and "[y]ou must provide medical evidence showing that you have an impairment(s) and how severe it is during the time you say that you are disabled"); Flynn v. Heckler, 768 F.2d 1273, 1274 (11th Cir. 1985).

In Plaintiff's Disability Report, there is no mention of obesity as a condition that would limit his ability to work (tr. 223). While Plaintiff did mention his obesity during his administrative hearing before the ALJ, he did not specifically raise it as a severe impairment or as a limiting condition, even when asked. Further, while there is occasional mention of Plaintiff's obesity in the medical record, there is effectively

no reference to the condition when considering his physical limitations and ability to work. A diagnosis alone is insufficient to establish the severity of an impairment. McCruter v. Bowen, 791 F.2d 1544, 1547 (11th Cir. 1986) ("the 'severity' of a medically ascertained disability must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality"); *see also* Salles v. Comm'r. of Social Security, 229 F. App'x 140, 145 (3d Cir. 2007). Plaintiff provides no facts and points to no evidence in the record to support his assertion that his obesity places significant limitations on his ability to work, and the objective medical evidence of record does not demonstrate that any treating or consultative physician placed limitations on Plaintiff due to his obesity. Accordingly, the court finds no error over the fact that the ALJ did not include Plaintiff's obesity among his severe impairments or evaluate its impact on his ability to work.

D.     Next, Plaintiff asserts that the ALJ failed to properly evaluate his testimony regarding his symptoms and limitations. A claimant may establish that he has a disability through his own testimony regarding his pain or other subjective symptoms. Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (per curiam). In such a case, the claimant must show: (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged

pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain. *Id.*

If, as here, the ALJ determines that the claimant has a medically determinable impairment that could reasonably be expected to produce the pain, he must then evaluate the extent to which the intensity and persistence of the pain limits the claimant's ability to work. 20 C.F.R. § 404.1529(b). The ALJ may consider the claimant's history, the medical signs and laboratory findings, the claimant's statements, statements by treating and non-treating physicians, and other evidence relating to how the pain affects the claimant's daily activities and ability to work. § 404.1529(c). "While both the Regulations and the Hand [v. Bowen, 793 F.2d 275, 276 (11th Cir. 1986)] standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, neither requires objective proof of the pain itself." Elam, 921 F.2d at 1215. "[P]ain alone can be disabling, even when its existence is unsupported by objective evidence." Foote v. Chater, 67 F.3d 1553, 1561 (11th Cir. 1995) (citations omitted). The presence or absence of evidence to support symptoms of the severity claimed, however, is a factor to be considered. Marbury v. Sullivan, 957 F.2d 837, 839–40 (11th Cir. 1992); Tieniber v. Heckler, 720 F.2d 1251, 1253 (11th Cir. 1983).

Here, the ALJ found Plaintiff's subjective statements regarding the severity of

his symptoms not to be supported by the objective evidence in the record:

> The claimant alleges that he experiences constant knee pain that
> prevents him from working. However, the medical evidence of record
> reveals that treatment for the claimant's knee pain and arthritis has been
> relatively sparse and has consisted of primarily conservative medication
> management with few if any recommendations for surgery, pain
> management, or other more aggressive treatment options that would be
> expected for pain of the degree alleged. Though the claimant ambulates
> with a cane and uses knee braces, physical examinations have shown the
> claimant to have normal range of motion of the knees, minimal swelling,
> and no tenderness. X-rays of the knees have shown minimal
> abnormalities. As for the claimant's hypertension and thyroid disorder,
> records reveal that the claimant has been noncompliant with his
> treatment regimen. He continues to smoke cigarettes, despite repeated
> admonishments by his physicians to stop smoking in light of these
> conditions.

(tr. 32 (record citations omitted)). Thus, the ALJ found that Plaintiff's impairments

did cause some pain and limitation, but not to the extent alleged by Plaintiff.

Contrary to Plaintiff's assertion, the court finds the ALJ sufficiently discussed

Plaintiff's symptoms and determined their consistency or reliability with regard to the

other evidence in the record.

Plaintiff contends that the ALJ's finding that the record was sparse as it related

to treatment for Plaintiff's knee pain overlooked the fact that Plaintiff had no medical

insurance and was only sporadically able to get free treatment and medications during

the claim period. Plaintiff's noncompliance with prescribed medication cannot be the

foundation for discrediting his testimony when that noncompliance was the result of his inability to afford the medication. *See* <u>Ellison v. Barnhart</u>, 355 F.3d 1272, 1275 (11th Cir. 2003). However, the ALJ is required to investigate into whether the claimant was unable to afford his medication only when the ALJ relies on noncompliance as the sole ground for the denial of disability. *See id.* at 1275. As seen above, the ALJ cited Plaintiff's noncompliance only as it related to Plaintiff's medication for his hypertension and thyroid disorder. Further, noncompliance is not the only evidence cited by the ALJ in his analysis. Moreover, as Plaintiff recognizes, free medications were generally available to him, and his failure to obtain them appeared to be episodic in nature and to stem not from any cost factor but rather Plaintiff's occasional problem with attending his doctor appointments (tr. 50–51).

Plaintiff contends that the ALJ violated the new norm set out in SSR 16-3p, *see* 2016 WL 1119029 (S.S.A. March 16, 2016), which expressed disfavor for the term "credibility" and provided instead that a claimant's subjective statements would be reviewed with regard to their consistency with the other evidence in the record. As Plaintiff acknowledges, however, both the ALJ and the Appeals Council did indeed phrase Plaintiff's statements in terms of whether they were consistent with the medical record and not with regard to Plaintiff's credibility. Plaintiff focuses on the ALJ's statement that Plaintiff appeared to have worked only sporadically for the

preceding 15 years, which signified to the ALJ a "weak employment motivation and in turn weakens his contentions that but for his medically determinable impairments he would be working" (tr. 33). Plaintiff deems this statement an inappropriate examination of Plaintiff's character that runs afoul of SSR 16-3p. The court does not agree. Even assuming that an ALJ's failure to abide by the terms of SSR 16-3p in rendering an opinion would amount to reversible error,[3] the court finds the ALJ's statement in this instance not to expressly raise a matter of credibility but rather to make the point that Plaintiff's work history was inconsistent with his position that he would work were it not for his disability. Accordingly, the court finds no error in the ALJ's evaluation of Plaintiff's subjective reporting of his pain and other symptoms.

---

[3] In pertinent part, SSR 16-3p provides:

> [W]e are eliminating the use of the term "credibility" from our sub-regulatory policy, as our regulations do not use this term. In doing so, we clarify that subjective symptom evaluation is not an examination of an individual's character. Instead, we will more closely follow our regulatory language regarding symptom evaluation. Consistent with our regulations, we instruct our adjudicators to consider all of the evidence in an individual's record when they evaluate the intensity and persistence of symptoms after they find that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms. We evaluate the intensity and persistence of an individual's symptoms so we can determine how symptoms limit ability to perform work-related activities for an adult . . . .

SSR 16-3p, 2016 WL 1119029 (S.S.A. Mar. 16, 2016).

E.      Last, Plaintiff contends that the Commissioner erroneously found that additional evidence submitted to the Appeals Council supported the Appeals Council's decision.  "[W]hen a claimant properly presents new evidence to the Appeals Council, a reviewing court must consider whether that new evidence renders the denial of benefits erroneous." Ingram v. Comm'r of SSA, 496 F.3d 1253, 1262 (11th Cir. 2007).

If the claimant submits new noncumulative and material evidence to the AC after the ALJ's decision, the AC must consider such evidence *where it relates to the period on or before the date of the ALJ's hearing decision.* 20 C.F.R. § 404.970(a); *see also* Keeton v. Dep't of Health & Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994) (emphasis supplied).  Here, the additional evidence that Plaintiff submitted to the Appeals Council consisted of MRI's that were performed on both his knees on January 19, 2017, and an application for a disabled parking permit that was dated February 9, 2017.  As Defendant points out, the Appeals Council found Plaintiff disabled as of August 10, 2016 (tr. 7).  Plaintiff's new evidence therefore postdates the ALJ's decision, and as far as the Appeals Council's finding of disability, the decision relative to the time periods of the additional evidence was already favorable to Plaintiff.

In any event, although on the whole the evidence might support a finding that Plaintiff's knees have worsened over time (tr. 461–64), the court does not find this new evidence to overturn or call into question the ALJ's conclusions regarding Plaintiff's limitations as they were rendered in 2016. Accordingly, the court finds that the newly submitted evidence does not upset the decisions made by the ALJ and subsequently of the Appeals Council.

VI.    CONCLUSION

For the foregoing reasons, the Commissioner's decision is supported by substantial evidence and should not be disturbed. 42 U.S.C. § 405(g); Lewis, 125 F. 3d at 1439; Foote, 67 F.3d at1560. Furthermore, Plaintiff has failed to show that the ALJ applied improper legal standards, erred in making his findings, or that any other ground for reversal exists.

Accordingly, it is hereby **ORDERED**:

1.     That the decision of the Commissioner is **AFFIRMED**, and this action is **DISMISSED**.

2.     That **JUDGMENT** is entered, pursuant to sentence four of 42 U.S.C. § 405(g), **AFFIRMING** the decision of the Commissioner.

3.     That the Clerk is directed to close the file.

At Pensacola, Florida this <u>29</u> day of September 2018.


<u>/s/ *Elizabeth M. Timothy*          </u>
**ELIZABETH M. TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**